**[The STATE ex rel.] FENTON et al.**

**v.**

**DEPARTMENT OF HUMAN SERVICES et al.**

[Cite as *State ex rel. Fenton v. Dept. of Human Serv.* (1993), 87 Ohio App.3d 284.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–120.

Decided May 18, 1993.

*Jones, Sheridan & Jump Co., L.P.A.,* and *John S. Jones,* for relators.

*Ronald J. O'Brien,* City Attorney, and *Alan P. Varhus,* Assistant City Attorney, for respondents.

TYACK, Judge.

On June 17, 1968, Albert B. Fenton and Shirley J. Massey ("relators") were hired by the city of Columbus as youth program coordinators ("YPC") in the Department of Public Safety, Youth Corps Division. In February and March 1973, relators were appointed from an eligible list for YPC class to the Mayor's Office, Neighborhood Youth Corps Division ("NYCD"). From the time of the commencement of their employment with the city until January 1, 1975, relators were paid from NYCD federal funds. On January 1, 1975, relators were transferred from NYCD to the Comprehensive Employment and Training Act ("CETA")/Manpower Administration Division, Department of Community Services. Relators were paid from CETA funds and continued to be classified as YPC.

On December 6, 1983, the director of the Department of Community Services, pursuant to Municipal Civil Service Commission Rule XII(C)(1), filed a written request for layoffs of CETA-funded employees, including three in the YPC class

with the Municipal Civil Service Commission ("commission"). On January 6, 1984, and in compliance with Rule XII(C)(2), the commission issued a layoff certification. The certification list did not include relators' names but, instead, listed employees in the YPC class within the Youth Services Bureau. No layoffs occurred as a result of the January 6 certification, however, because the CETA cost pool was extended to April 30, 1984.

On April 12, 1984, the director of the Department of Human Services ("director") filed a written request for layoffs, again in compliance with Rule XII(C)(1), of CETA-funded employees, including three in the YPC class. On April 18, 1984, the commission was notified that three employees in the YPC class, Youth Services Bureau, had indicated that they were working out of class. The following day, the director stated that those three employees and two others also within the Youth Services Bureau should have their classes upgraded. Relators then notified the commission that they too might be misclassified and requested a job audit. An audit was conducted, recommending that the YPC/Youth Services Bureau positions be reallocated but that relators' YPC positions be considered as properly classified.

On July 16, 1984, at a regular meeting of the commission, Robert R. Zook, deputy director of Human Services, orally requested that the Youth Services Bureau positions be reallocated as the audit recommended. The commission adopted the recommendation. Zook then orally requested a certification for the layoff of relators. The commission then certified the relators for layoff. The following day, job vacancies for the five reallocated Youth Services Bureau positions were posted. Relators applied for those positions but were unable to meet the educational requirement. On July 22, 1984, the employees previously occupying the former YPC/Youth Services Bureau positions were given provisional appointments to the reallocated positions.

On July 23, 1984, the commission certified the names of relators for layoff in writing. On July 31, 1984, the relators were laid off.

Relators timely appealed their layoffs to the commission, alleging procedural and substantive errors. The commission dismissed the appeal for lack of subject-matter jurisdiction to entertain an appeal which contests a layoff. Relators appealed to the Franklin County Court of Common Pleas, which affirmed the commission's decision. Relators then appealed to this court, and we reversed on June 26, 1986. The Supreme Court of Ohio reversed our decision, stating that the commission did not have jurisdiction over relators' appeal. *Fenton v. Enaharo* (1987), 31 Ohio St.3d 69, 31 OBR 183, 509 N.E.2d 67. However, the Supreme Court did state that an action in mandamus was available to contest procedural deficiencies regarding layoffs.

On February 8, 1988, relators commenced this original action in mandamus, alleging that they were classified civil service employees, that the commission had a clear legal duty to comply with Rule XII(C), and that the commission failed to do so. Relators requested reinstatement, back pay and benefits, attorney fees, and an order that the commission (hereinafter "respondents") comply with the rules regarding layoff procedure for classified civil service employees. Respondents claimed that relators were laid off from federally-funded CETA positions and, therefore, were not within the city's classified service. This court held that, based on the Supreme Court's decision in *State ex rel. Cleveland v. Columbus Dept. of Community Serv.* (1986), 23 Ohio St.3d 47, 23 OBR 123, 491 N.E.2d 304. CETA employees were not within the classified service. Therefore, we denied relators' request for a writ of mandamus.

Relators appealed to the Supreme Court of Ohio. The Supreme Court concluded that, under the facts of this case, the Columbus City Charter provided civil service tenure to relators. The *Cleveland* case, accordingly, was overruled to the extent it was inconsistent with the Supreme Court's decision. *Fenton v. Dept. of Human Serv.* (1992), 63 Ohio St.3d 481, 589 N.E.2d 11. The Supreme Court then ordered respondents to "reinstate [relators] and permit them to exercise their bumping rights under commission Rule XII(C). Finally, [relators] may receive back pay if they establish, on remand to the court of appeals, the amount recoverable with certainty." *Id.* at 483, 589 N.E.2d at 13.

The case is now before us on remand and on relators' motion for a determination of back pay. The action was referred to a referee, who submitted a report and recommendation that back pay not be granted because relators failed to establish the amount recoverable with certainty. Relators filed objections to the referee's report and, as a result, the action is before us for a full, independent review of the pertinent issues.

In *Monaghan v. Richley* (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462, the Supreme Court of Ohio held that a reinstated public employee may receive compensation for the time during which he or she was wrongfully excluded from employment provided the amount recoverable is established with certainty. *Id.* at syllabus. The referee and respondents conclude that because relators have not established the results of the exercise of their bumping rights, they cannot establish their back pay with certainty. Respondents contend that there would be no position to which relators could bump. Concluding that the successful exercise of bumping rights is a prerequisite to the establishment of back pay with certainty, the referee found no entitlement to back pay.

Relators, on the other hand, argue that back pay and the exercise of bumping rights are independent. Relators contend that the Supreme Court's mandate was for respondents first to reinstate relators to their former positions and *then* allow

them to exercise their bumping rights once they are properly laid off in accordance with commission rules. Relators are essentially arguing that the only issue for this court to decide is the amount of back pay due, assuming relators can establish it with certainty, and that relators' exercise of bumping rights is irrelevant to this determination. We agree with relators' contention and reject the recommendation of the referee.

The mandate of the Supreme Court is clear: "[Respondents] *shall* reinstate [relators] and permit them to exercise their bumping rights * * *. Finally, [relators] may receive back pay if they establish, on remand to the court of appeals, the amount recoverable with certainty." (Emphasis added.) *Fenton v. Dept. of Human Serv., supra,* 63 Ohio St.3d at 483, 589 N.E.2d at 13. An order of reinstatement itself is a determination that the employee was wrongfully discharged. *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 365, 21 O.O.3d 228, 230, 423 N.E.2d 1099, 1101. Here, the wrongful discharge occurred when respondents failed to follow Rule XII(C) properly in laying off relators. This noncompliance with the rule rendered relators' layoffs void. See *State ex rel. Alford v. Willoughby* (1979), 58 Ohio St.2d 221, 225, 12 O.O.3d 229, 231, 390 N.E.2d 782, 785. Because relators' layoffs are void, they have no need to exercise their bumping rights. Accordingly, the first step here is for respondents to reinstate relators.

Respondents contend that reinstatement of relators to their former positions is impossible because the position of YPC no longer exists. On December 9, 1986, the YPC class was abolished by the commission. However, as we have stated above, relators' layoffs from this position are *void.* The resulting legal effect is that relators are now and have been employed in the YPC class since the wrongful discharge. In addition, there is no evidence in the record showing that relators were afforded the proper procedure at the time their positions were abolished by the commission in 1986. See *State ex rel. Woods v. Clermont Cty. Bd. of Mental Retardation* (June 30, 1986), Clermont App. No. CA83–10–084, unreported, 1986 WL 7395.

Because we have found that relators' layoffs are void and that, therefore, the need to determine relators' bumping rights is premature, we find that relators can establish their entitlement to back pay with certainty.

Public employees who have been wrongfully excluded from employment are entitled to recover their salaries, less the amount they have earned or could have earned, in the exercise of due diligence, during the period of their wrongful exclusion. See *State ex rel. Martin v. Columbus* (1979), 58 Ohio St.2d 261, 12 O.O.3d 268, 389 N.E.2d 1123, paragraph two of the syllabus. At the time of their wrongful discharge, relators were in pay range 23, and the rate of pay was $9.23

per hour. The parties have stipulated that relators, as non-bargaining-unit employees, were covered by a "General Pay Plan" established by the city, which assigned increasing amounts of pay to their pay range. Relators also were entitled to service credits in accordance with their years of service.

In addition, relators have each received wages from other employment and/or unemployment benefits, and their back pay will be reduced accordingly. The exact amount of relators' back pay cannot be determined until relators are reinstated. However, once reinstated, such determination shall be in accordance with the figures stipulated to by the parties and filed with the court on December 1, 1992. Finally, relators are entitled to simple interest on their back pay at the rate of ten percent per annum. See *Robinson, supra,* 67 Ohio St.2d at 368, 21 O.O.3d at 232, 423 N.E.2d at 1103.

In making these orders, we are merely following the mandate of the Supreme Court of Ohio. It relied at least in part upon *State ex rel. Rose v. James* (1991), 57 Ohio St.3d 14, 565 N.E.2d 547. In reading *Rose,* it is clear that the clause "the amount recoverable with certainty" is quoted verbatim in a context that means it is the amount that is able to be calculated, not the amount dependent upon the exercise of bumping rights prior to calculation.

Relators have also requested accumulated sick and vacation leave pay. Relators have shown no evidence supporting their entitlement to such, and it is therefore denied. See *Robinson.*

The Supreme Court has ordered that relators be reinstated. This court hereby orders respondents to comply with such mandate and reinstate relators immediately. The parties may stipulate to the date of reinstatement, but in no manner shall delay this order again. Once the date of reinstatement has been determined, the parties shall appear before this court, where a determination of relators' back pay with interest shall be made. Back pay shall be determined from the date of their wrongful discharge to the date of reinstatement and such determination shall be in accordance with this opinion and the 1992 stipulations. Upon reinstatement, and if respondents determine that relators must be laid off, respondents shall follow the proper procedure for laying off classified civil service employees, including permitting relators to exercise their bumping rights.

As indicated above, the objections filed by relators are sustained. The writ sought by relators and mandated by the Supreme Court of Ohio is granted.

*Objections sustained*
*and writ granted.*

PEGGY BRYANT, P.J., and CLOSE, J., concur.